### BURR *vs.* SMITH.

Where, after a note has become due, a stranger calls upon the holder and pays the amount due upon it, declines having it canceled and takes it away with him, nothing being said about buying it, this will be held a payment and satisfaction of the note, so as to prevent a suit being brought thereon by a person receiving it from the stranger.

The plaintiff, under such circumstances, is not entitled to be regarded as a bona fide holder of the note, in such a sense as to exclude the equities between the maker and the person paying the note.

APPEAL from a judgment in favor of the defendant, entered on the report of a referee.   The action was brought to recover the amount due on a promissory note in the words and figures following:

"Farmington, Oct. 27, 1851.

Three months after date, for value received, I promise to pay James Osborne, or bearer, two thousand dollars, with interest.                         MYRON NORTON.

JACOB SMITH, surety.

MELANCTHON LEWIS, surety."

The plaintiff produced the note on the trial, before the referee, and proved its execution by the defendant.   Upon the back of the note were two payments, indorsed as follows:

"Received on the within note, six hundred dollars, January 31, 1852, of Jacob Smith."

"Received on the within note, of Jacob Smith, $418.83. Feb. 7, 1852."

Burr *v.* Smith.

The plaintiff, after proving a computation of the amount due. on the notes, rested. The defendant then introduced Charles J. Folger as a witness, who testified, among other things, that he resided in Geneva; "I owned this note jointly with Joseph S. Lewis; we bought it before it became due; we kept it a few days after it became due. While we were the owners, the whole amount due on the note was paid us. The last of the money was paid to us a week or fortnight after the 7th day of · February, 1852." On his cross-examination, this witness testified that he received the last payment personally; that he did not know the person who paid it to him; had since learned his name was George S. Riley. "Mr. Riley came into my office; he asked me if I was Mr. Folger; he then asked if I had such a note; I told him I had; I was then asked if I would receive the money upon it; my reply was that we were willing to take the money. I then got the note and ascertained the amount; Mr. Riley paid it to me in bank bills; I gave him the note; I asked whether I should cancel the note; he declined having it canceled. I asked Mr. Riley where the money came from, and he said from Rochester." This witness also testified that no person ever applied to him to buy the note, and that he never offered to sell it. It was admitted that the plaintiff and Riley both resided in Rochester. The trial took place at Canandaigua. The referee reported in favor of the defendant.

*M. S. Newton*, for the plaintiff.

*S. V. R. Mallory*, for the defendant.

*By the Court*, WELLES, J. The only question in this case is, whether the transaction between Riley and the witness Folger, as testified to by the latter, amounted to a payment and satisfaction of the note in question, or a sale and transfer thereof by Folger to Riley. The referee finds that the note was paid and satisfied to Folger while in his hands, he being one of the owners thereof at the time, the note then being over due.

Burr *v.* Smith.

The note was the debt of Myron Norton, one of the makers; the defendant and Melancthon Lewis having signed it as sureties for him. The payments made by the defendant to Folger and Joseph S. Lewis while the note was owned by them and in their possession, amounted to one half of the amount for which it was originally given, with interest. The last payment made by the defendant, was on the 7th of February, 1852. Judge Folger testified that a week or fortnight afterwards he was called upon by a person who he did not know at the time, but who he had since learned was George S. Riley. That Riley came into his office and asked the witness if he was Mr. Folger, and upon being answered in the affirmative, inquired if the witness had such a note, and was told that he had. Riley then asked whether he, Folger, would receive the money upon it, and Folger told him, in reply, that he was willing to take the money. Folger then got the note and Riley paid the balance due on it and took it away. On the same occasion the witness asked Riley if he should cancel the note, and he declined having it canceled. The witness testified, on a re-examination, that no person ever applied to him to buy the note. This transaction was after the note was past due, and the plaintiff is therefore not entitled to be regarded as a bona fide holder of the note in such a sense as to exclude the equities between the defendant and Riley.

In my opinion, the referee's finding, upon the evidence, that the note was paid and satisfied, is sustained by the evidence. The production of the note at the trial was *prima facie* evidence that it belonged to the plaintiff, and that he had received it before due, in the regular course of business. But this presumption is fully met and rebutted. It remained in the hands of Folger and Lewis, who had purchased it before maturity, until after it was dishonored, and until Riley obtained it by paying what was due upon it, as before stated, and without then or at any other time saying a word about its purchase. It is true he declined having it canceled; but that circumstance was not enough, in my judgment, to overcome the presumption arising from the facts proved, that it was paid and ex-

tinguished.  It does not prove a purchase, and unless it was purchased by Riley, it was satified by the payment.  Folger regarded it.as a payment, and not a sale; and he was a party to the sale if there was one.  It is a suspicious circumstance, that Riley was not produced as a witness.  He knew in what character and in whose behalf he paid the money, and whose money it was with which the payment was made.

The judgment appealed from should be affirmed.

[MONROE GENERAL TERM, December 3, 1855.  *Selden, T. R. Strong* and *Welles,* Justices.]