THOMAS CORNELL, Respondent, *v.* WILLIAM HAYDEN, Appellant.

In 1855 H. contracted to sell certain premises to defendant, who covenanted to pay the purchase-price in annual installments; the deed to be delivered when the whole was paid. It was provided in the contract that in case of non-performance on the part of defendant of any of his covenants the contract should become void and H. have the right to enter into possession, "the same as if the contract had never been signed." Defendant entered into possession and occupied it until March, 1863, paying none of the principal, but paying the interest under an oral agreement. He then transferred his interest in the contract to J., who continued to occupy, under a similar verbal agreement, until his death in 1870. He left surviving him his widow and three children, all infants, who had no estate except their interest in the contract. The widow occupied under a similar verbal arrangement, paying interest up to February 1, 1875, but none of the principal. Before that time one of the children died a minor and intestate. Since that time no interest has been paid. Prior to February, 1877, the widow advised H. that she was unable to pay and asked him to abandon the contract, to which he consented. She had arranged with plaintiff that he would pay her $289.50, and pay H. the amount unpaid on the contract if the latter would deed to him; this H. agreed to do. Thereupon the widow, acting on behalf of herself and her children, assigned the contract to plaintiff, agreeing to surrender possession April 1, 1877. In pursuance of this arrangement the contract was surrendered to H., who deeded the premises to plaintiff, the latter paying to the widow the sum agreed. In 1876 defendant rented part of the premises of the widow,

and in April of that year was appointed general guardian of the children. After the widow left the premises he occupied the whole premises under a claim of right as guardian, and refused, on demand by plaintiff, to deliver up possession. He tendered to plaintiff a sum greater than the contract-price and interest unpaid, but conditioned upon the latter's executing a deed to the children. In an action of ejectment, *held*, that on the death of J. the obligation to pay devolved upon his widow and heirs, and upon demand made of either of them and refusal to pay, plaintiff was entitled to recover possession; that neither the infancy nor widowhood released or modified the obligation or extended the time of payment; that, conceding the right to a specific performance had not wholly ceased to exist, but remained suspended and could have been revived by a tender, that made was insufficient, because coupled with a condition that plaintiff would convey absolutely, although he had acquired and was entitled to retain the widow's interest; also, that there was no equitable defense in favor of defendant, who, while standing in the relation of tenant to plaintiff, procured himself to be appointed guardian of part of the owners, and thereupon denied the title of his landlord and claimed the right to occupy the whole premises.

(Argued April 15, 1889; decided May 3, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 4, 1886, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*William Lounsbery* for appellant. The agreement from Mrs. King and her husband to the plaintiff, in March, 1877, did not operate as a conveyance of the interest of the two minor children of Joseph Hayden. (*Cagger* v. *Lansing*, 64 N. Y. 428; *Emerson* v. *Spicer*, 46 id. 594.) A contract for the purchase of land goes to the heir. (Story Eq. Juris. § 790; Fry on Specific Performance, § 118; *Watson* v. *LeRow*, 6 Barb. 481; 3 Johns. Ch. 312; 6 id. 398; 11 Paige, 268; 34 Barb. 173; 48 id. 330.) When the defendant was appointed by the surrogate he took the place of guardian in socage, and he represented the infant's right of possession. (*Emerson* v. *Spicer*, 46 N. Y. 594.) The defendant can interpose an equitable title as a defense. (*Crary*

v. *Goodman*, 12 N. Y. 266.)    The Jansen Hasbrouck contract
was a valid and subsisting contract at the time of the com-
mencement of the action. (*Stevenson* v. *Maxwell*, 2 N. Y.
408; *Stone* v. *Sprague*, 20 Barb. 509; *Parker* v. *Parmalee*,
20 Johns. 130; *Gale* v. *Nixon*, 6 Cow. 445; *Morris* v. *Sliter*,
1 Denio, 59.)    The plaintiff in case he disputed the sufficiency
of tender, was bound to make a demand of purchase-money and
tender deed to put defendant in default.    Possession was notice
to plaintiff.    (*Park* v. *Jackson*, 11 Wend. 442.)    The contract
was binding on the vendees, the heirs-at-law of Joseph Hayden.
They were in possession and were liable to pay.    They could
not rescind.    (*Tompkins* v. *Hyatt*, 28 N. Y. 347; *Goeth* v.
*White*, 35 Barb. 76.)    The tender of the contract-price and
interest entitled the defendant to a deed and was a bar to the
action. (*Stone* v. *Sprague*, 20 Barb. 509.)    The defendant's
delay is accounted for reasonably. (*Tompkins* v. *Hyatt*,
28 N. Y. 347; *Goeth* v. *White*, 35 Barb. 76; *Duffy* v.
*O'Donovan*, 46 N. Y. 223.)

*John J. Linson* for respondent.    The surrender of the con-
tract by Mrs. King, under the circumstances, and her abandon-
ment of the premises for a valuable consideration, were valid
and effectual acts and divested the infant heirs of such interest
as they had left in the premises. (2 R. S. [7th ed.] chap. 1,
tit. 1, art. 1, § 5, 2162; Tyler on Infancy, 239–241, 263 ; *White*
v. *Parker*, 8 Barb. 71 ; *Field* v. *Schieflin*, 7 Johns. Ch. 150 ;
*Emerson* v. *Spicer*, 46 N. Y. 594 ; *Bryne* v. *Van Hoesen*,
5 Johns. 66 ; *Holmes* v. *Seely*, 17 Wend. 75 ; *Sylvester* v.
*Rolston*, 31 Barb. 287 ; *Cagger* v. *Lansing*, 64 N. Y. 425 ;
*Weed* v. *Ellis*, 3 Caines, 253 ; McPherson on Infancy, 37 ;
*Torry* v. *Black*, 58 N. Y. 185.)    The transaction between
Mr. Hasbrouck and Mrs. King amounted to a valid rescission
of the contract as against all the world, and the same become
void. (2 R. S. [7th ed.] chap. 1, tit. 3, § 1, 2197 ; *Hawley* v.
*James*, 5 Paige, 318 ; *Moore* v. *Burrows*, 34 Barb. 174 ;
3 R. S. [7th ed.] chap. 2, § 6, 2211 ; *Lawrence* v. *Miller*, 86

N. Y. 131; *Bakeman* v. *Pooler*, 15 Wend. 637; *Nelson* v. *P., etc., Co.*, 55 N. Y. 480; *Carman* v. *Pultz*, 21 id. 547; *Brinkerhoff* v. *Olp*, 35 Barb. 27; *Havens* v. *Patterson*, 43 N. Y. 222.) No right remained in either party, or in any representative of either, to claim specific performance, and no tender could revive the contract. (*Arnoux* v. *Homans*, 25 How. Pr. 427.) To make the tender effectual it should have been continuing; the money should have been brought into court or deposited, with notice to plaintiff, and the tender thus kept alive. (*Becker* v. *Boon*, 61 N. Y. 317; *Simpson* v. *French*, 25 How. Pr. 464; *Brown* v. *Ferguson*, 2 Denio, 196; *Kortright* v. *Cady*, 23 Barb. 490; *Wilder* v. *Seelye*, 8 id. 408; *Holdenby* v. *Tuke*, Willes, 632; *Giles* v. *Hart*, Salk. 622; *Whitlock* v. *Squire*, 10 Mod. 81.) The defendant has been guilty of inexcusable laches. (*Delavan* v. *Duncan*, 49 N. Y. 485; Fry on Specific Perform. §§ 730–732; Story's Eq. Jur. §§ 771–781; *Taylor* v. *Longworth*, 14 Pet. 172; *Havens* v. *Patterson*, 43 N. Y. 218; Bing. on Infancy, 99; Chambers on Infancy, 416–421; *Griffin* v. *Griffin*, 1 Sch. & Les. 352.) Under the circumstances, defendant was not entitled to notice to quit before ejectment brought against him. (*Pierce* v. *Tuttle*, 53 Barb. 156; *Jackson* v. *Miller*, 7 Cow. 747; *Harris* v. *Frinck*, 49 N. Y. 33; *Wright* v. *Moore*, 21 Wend. 230.)

POTTER, J. This is an action of ejectment brought to recover a lot of land situated in the county of Ulster. The original answer was a denial. In the course of the trial the defendant was allowed to prove facts outside of such issue and tending to the establishment of an equitable defense. The action was tried by the court and without a jury, by consent.

The court found the following facts: That Jansen Hasbrouck, the owner of the premises in question on February 1, 1855, entered into a contract to sell and convey the same to William Hayden in consideration of the sum of $1,084.50, in five equal annual payments, with interest annually on all sums unpaid on the first day of February in each year until the whole sum was paid, when Hasbrouck was to execute and deliver to Hayden a

warranty deed of the premises in question. By the terms of the contract, in case of non-performance of all or any part of the agreement by Hayden, the contract was to become null and void, and Hasbrouck was to have the right to enter into the possession of the premises the same as if the contract had never been executed. After the execution of the contract William Hayden entered into the possession of the premises and occupied then until the twenty-fourth of March 1863. During all this time he paid no part of the principal, simply paying the interest up to the first of February 1863, under an oral arrangement between himself and Hasbrouck. On the 24th of March, 1853, William Hayden sold and transferred all the interest he had in the contract to his brother Joseph Hayden, who immediately entered into the possession of the premises and continued in possession of the same until his death in 1870, when he died intestate. Joseph Hayden did not pay any of the principal of the purchase-price mentioned in the agreement, but paid the interest under a similar verbal arrangement with Hasbrouck, up to the first day of February 1869, having made the last payment of interest on the fourth day of February 1869. Joseph Hayden left him surviving, Mary his widow, and three children by her, all infants.

The youngest child died in the latter part of 1871, leaving Mary, his mother, and his infant brother and sister his sole heirs. The children had no estate other than the interest which they obtained in this contract by the death of their father, Joseph Hayden, and the interest which the surviving children obtained in the contract by the death of the youngest child. Mary, after the death of her husband, occupied the land until the latter part of April, 1877, paying the interest under a similar arrangement between her and Hasbrouck, up to February 1, 1875, but none of the principal. All of the children lived with her until the death of the youngest, and the other two down to the time when she left the premises, when they lived with her elsewhere, being supported and maintained by their mother from the time of the death of their father. For a short time before the mother's death one of the children, and since the mother's

death both, have resided with the defendant. . The interest on the money agreed to be paid by the contract has not been paid since February 1, 1875, nor has any part of the principal been paid down to that time. Sometime prior to the 1st of February, 1877, the widow went to Hasbrouck and informed him that she would have to abandon the contract, that she had no money and could not procure any money to pay it up. Hasbrouck gave her further time, but after some little time she again went to him and told him she was unable to pay it and asked him to abandon the contract, and he consented to its abandonment. Thereupon Hasbrouck and the widow mutually consented to and did abandon the contract. As part of the transaction in regard to the consent to abandon the contract, at the solicitation of Mary, the plaintiff agreed to pay her the sum of $289.50, and also, with her consent, agreed to pay the amount unpaid upon the contract, if Hasbrouck would execute a deed of the premises to him. In pursuance of such agreement Mary, who had married again, with her second husband, King, acting in behalf of herself and the children, executed an assignment of the contract, bearing date the 2d day of March, 1877, to the plaintiff, with authority to receive a deed of the land from Hasbrouck and agreeing to deliver possession to the plaintiff April 1, 1877. The plaintiff having been informed by Hasbrouck that he would execute a deed to him, if desired by Mary, in pursuance of the agreement, the contract was surrendered to Hasbrouck, who executed and delivered a deed of the premises to him, bearing date on the 3d day of March, 1877, which was duly recorded on the 6th day of March, 1877. The plaintiff at the time of the execution of the assignment paid to Mary and to her husband the sum of $289.50, which was on account of taxes and improvements claimed to have been paid by her, and at the time of the execution of the deed by Hasbrouck to plaintiff, plaintiff paid the amount unpaid on the contract. Mary had no money of her own or property of the infants wherewith to pay the money unpaid on the contract, and the only way anything could be realized for herself or the children out of the premises was by taking

the course she did. In 1876 the defendant rented part of the house on the premises from Mary, she occupying the remaining portion of the house. On the ninth of April the defendant was regularly appointed general guardian of the person and estate of the two surviving children of Joseph Hayden. The infants being, respectively, of the age of eight and ten years.

The defendant has continued to reside on the premises since the time he entered on the same as the tenant of Mary, the widow, and still resides on the same, and since Mary has moved off has occupied the whole of the premises under a claim of right as guardian of the children, and has refused to deliver up the possession of the same to the plaintiff after demand made upon him before the commencement of this action, and he made tender of a sum which was found by the trial court to be more than the purchase-price under the contract and the interest unpaid; this tender was, however, upon condition that plaintiff would execute a deed of the premises to the children. No guardian was ever appointed for the children by any court before the appointment of the defendant. The guardianship of the infants with the rights, powers and duties of a guardian in socage were vested in the mother from the death of their father until the appointment of the defendant as the general guardian. The value of the use and occupation for the five years is $600.

The lands embraced in this contract had the characteristic of real estate to said Hayden, and retained the same by the assignment to Joseph Hayden. Upon his death it went to his widow, Mrs. King and their children, with the characteristics of doweress and heirs-at-law. Upon the death of one of the heirs, his right went to Mrs. King, his mother, for life. From the time of the death of her husband and child, Mrs. King was doweress, had a life estate in the one-third of the estate, subject to her dower right, and was guardian in socage for the other two children in respect to their interest in the lands. The obligation rested upon her and the infants to make the payments called for by the contract. If she failed to do so after demand of payment, the vendor could rescind the con-

tract and bring an action to recover possession or take posses-
sion of the premises by any means short of a breach of the
peace or forcible entry.

It is obvious, from this state of facts, that there was default
of long standing, not only in paying any part of the principal
debt or purchase-price, but in the payment of the interest
since February 1, 1875, and that the vendor upon demand of
the payment and a neglect or refusal upon the part of the
vendee, or those standing in that relation, to do so within a
reasonable period, could maintain an action to recover or take
peaceful possession without action. Neither the infancy of
the heirs nor the widowhood of the wife of the assignee
of the vendee, or the laches of the infants, released or modi-
fied in the least degree the obligation of the payment of the
purchase-price or extended the time of its payment. (*Havens* v.
*Patterson*, 43 N. Y. 218–222.)

She had, while holding the title as doweress and as the heir
of her deceased child and the guardian in socage of the other
two infant heirs, twice come to the vendor and represented to
him that neither she nor the infant heirs had any money or
means, nor was there any estate of her deceased husband with
which to pay the purchase-price or any part of it, or the
interest in arrear thereupon, and asked him to abandon the con-
tract and to release them from its obligations. The vendor
consented to do so and she promised to abandon the contract
and to yield the possession of the premises to the vendor. As
we have seen, if the vendor had demanded payment of the
purchase-price or the interest within a reasonable period, and
such demand was not complied with, the vendor could have
recovered the possession in an action brought for that purpose,
or could have resumed the peaceful possession of the premises,
and it would have been sufficient to maintain such action that
demand of payment was made upon any one of those upon
whom the obligations to pay rested. (*Havens* v. *Patterson*,
*supra*; *Carman* v. *Pultz*, 21 N. Y. 547.)

It can not, it seems to me, be reasonably contended that the
fact that the widow, and owner of the one-third and the

guardian in socage of the owners of the remainder of the premises, desired to be released from the contract and to abandon the same, and who had no means or way to pay or perform the contract, should be less potential in enabling the vendor to recover or to take possession of the premises than a demand of payment of the principal or interest and a non-compliance with such demand. It follows, from these premises, that the vendor could have maintained an action to recover these premises at the time he conveyed them to the plaintiff.

The result we have reached is based wholly upon the legal rights existing between plaintiff, standing in the position of the vendor by virtue of his deed, and the defendant, because of the default of payment. We will consider briefly the equitable relations existing between the plaintiff and defendant, and see whether they require or should produce any change from the legal result. The plaintiff had purchased of Mrs. King her dower interest, and also an estate for life, as heir of the deceased child, and paid her therefor the sum of $289.59, and received a transfer of those interests in March, 1877. Previous to this, and in 1876, defendant had leased of Mrs. King, and gone into the occupancy under such lease, a portion of the premises, and continued so to occupy until after the transfer by Mrs. King to the plaintiff. After this transfer the defendant procured himself to be appointed the general guardian of the two surviving infant heirs, and when the plaintiff demanded possession of the premises of the defendant, the latter claimed the right of possession as the general guardian of the surviving infants. Assuming now, as was done upon the trial, that the pleadings permitted the evidence upon the trial tending to establish a right to specific performance of the contract of sale between Jansen Hasbrouck and Hayden, we encounter these difficulties : First. The right of specific performance had been lost to the vendee and those succeeding to his position under the contract. Second. If such right had not totally ceased to exist, but remained suspended, the tender required to revive the right was accompanied with the condition that the plaintiff should execute an unqualified deed of the premises to the two

surviving heirs, regardless of the right which he had acquired of Mrs. King and paid for, and without any recognition whatsoever of those rights. The plaintiff had certainly acquired the estate of Mrs. King while the defendant was her tenant in the occupation of a portion of the premises, and, by operation of law, he became the tenant of plaintiff upon the plaintiff's purchase from Mrs. King. The defendant, while standing in the relation of tenant of the plaintiff, got himself appointed the general guardian of a part of the owners of the premises, and then denied the right of his landlord and claimed the right to occupy the whole of the premises. We perceive no equity in such defenses to the plaintiff's action.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.